Case number 22-1654, John Doe v. University of Michigan, et al., or Arguments Not to Exceed, 15 minutes per side, Ms. Amanda Kelly Rice for the appellants. Good morning, your honors, and may it please the court. My name is Amanda Rice and I represent the University Appellants. If I may, I'd like to reserve three minutes for rebuttal. Fine. This case began more than five years ago when a plaintiff raped her. The university took those allegations very seriously and, as it was obligated to do under Title IX, began investigating. But before that investigation was completed and before any findings were proposed, plaintiff filed a lawsuit claiming that the university's procedures violated his right to due process. In the years since, this case has taken a winding procedural path, but the important point is that that investigation was never completed and plaintiff was never found responsible for any violation. As a result, the deprivation underlying his due process claim was always purely hypothetical. The plaintiff could have prevailed. Was there a deprivation of his transcript for a period of time from, like, June 4th to June 12th? You have the dates correct, Judge Moore. It was an eight-day transcript hold. The issue with the transcript hold, however, is that standing needs to be adjudicated based on a specific claim and the relief sought. And on that particular claim, again, that the dispute dissipated after eight days and the plaintiff received all of the relief he'd asked for, his transcript, before any court order issued. So it wasn't a prevailing party on that basis. So couldn't he be prevailing because he actually won his unmarked transcript? Did he have to have a court order to make him a prevailing party on that limited matter? Yes, a voluntary... I think Buchanan, the Supreme Court's decision in Buchanan, is the clearest case on this. But the court rejected the catalyst theory, whereby courts used to look at, you know, whether the litigation was a catalyst for a settlement. Courts don't do that anymore. If the court order didn't give the plaintiff any relief, if it didn't give him anything at the moment it was entered, and here it didn't. He had the transcript in his hands two days earlier. I thought that the district judge basically had some kind of a hearing and convinced, shall we say, the University to give the transcript. There was a telephonic status conference where these issues were discussed, but there was no order entered. And after that telephonic hearing, the University decided, sort of voluntarily decided, to give the plaintiff his transcript. Okay, but if that transcript said, that literally quoted the district judge saying, University, I think you really should give that transcript to this guy, would that be enough to make him a prevailing party on the transcript issue? I don't think so, Your Honor. I think courts discuss these issues with parties and sort of encourage settlement and advance all the time. I think the point of the court's holding in Buchanan is that you don't have to sit here and try to The court never entered an order, never gave plaintiff any tangible relief, and at the time that TRO order entered, he already had the transcript in his hands, so it didn't provide him anything he didn't already have. Under your argument, a defendant could almost always avoid attorney fees if it appears, however it does appear, that they might lose by providing the relief at the eleventh hour, at the last minute, and always avoid attorney fees, even if there never would have been that resolution, but for the filing and maybe the maintaining of the lawsuit, isn't that problematical? Aside from your citation of the case law you just pointed to, that you say favor your argument, but isn't that a problematical situation? I don't think so, Judge Clay. I mean, to start, there was a more fundamental problem here because the district court lacked subject matter jurisdiction to begin with, but even putting that to one side, settlements are supposed to be encouraged. It's a good thing if parties settle their disputes without... Yeah, but gamesmanship or manipulation in connection with the settlement process is not helpful to anybody. I don't think gamesmanship is what's being alleged here. There was a settlement, there was an agreement after the case had proceeded just eight days, and I guess I'd say too, Your Honor, that even if you think that the plaintiff prevailed in some limited respect, with respect to the transcript, that covered just eight days of litigation, and it went on for years after that, and so that limited relief, even if you think that he prevailed on that point, couldn't support the fee award. But could it support a more limited fee award? I think the answer is... What was done to get to that stage? I think the answer is no, Your Honor, because the plaintiff didn't prevail with respect to the transcript. But apart that, if we didn't agree with you on that, wouldn't a partial attorney's fee, not the full $400,000, but some smaller amount, which would yet need to be determined by the district court? Yes, I think if you disagree and you think that the plaintiff prevailed with respect to the transcript, the proper remedy here is a remand for the district court to recalculate an appropriate award in light of that limited relief. Again, I don't think that that was the case here, but that would be the appropriate remedy if you thought that it were. So back to the ripeness and standing challenge, which I think is the most fundamental problem here. The point is that the plaintiff here never underwent the procedures and no deprivation ever occurred. Except for the transcript. Putting the transcript to one side, Your Honor. Was the transcript issue still unresolved at the time that the plaintiff filed his lawsuit? Yes, the transcript was released eight days after the plaintiff filed his lawsuit. And so perhaps the language of mootness, if you think that the plaintiff prevailed with respect to the transcript, fits better here then. But that dispute, I think, clearly became moot. I don't see plaintiff disputing that in their papers about the transcript eight days after the litigation started. The only ongoing dispute was plaintiff's challenge to the university's process, and specifically whether he was entitled to a hearing and cross-examination. Now, it turned out in Doe versus Baum that the university's process was held not to provide the requisite procedures. So the university amended its policy. The litigation proceeded another year after even that. We'd given the plaintiff all of the relief he'd asked for and weren't allowed to get out of court and complete this procedure. And so I'll go then to mootness, which at that point I think is the is the key distinction. Again, there was never subject matter jurisdiction over the due process claim because the deprivation hadn't happened. But even if there were, that dispute became moot. The You can seek injunctive relief when you have standing or when the dispute is ripe, which is to say the deprivation has to be imminent. That's the ripeness language. Or certainly impending is the language this court uses when it talks about standing. So I suppose there could be a hypothetical case in which it were totally clear the deck was stacked against them, the deprivation was certainly impending. But otherwise, the remedy is to wait and see whether there's actually a dispute, whether you've been deprived of something. And then, yeah, you get injunctive relief. Specifically, you get the process you asked for when they have to go back and do it again. But you don't get to go in advance when you could have prevailed. The plaintiff here has maintained his innocence throughout. He well could have prevailed or the claimant could have declined to proceed. That's actually, in fact, what happened. In connection with the plaintiff's request for injunctive relief, did the district court have occasion to rule that the Younger case doctrine did not apply in this case? I don't know if the district court engaged with that issue specifically. The district court purported to grant an injunction and a year after the court's policy had changed, it wasn't an injunction really, it was declaratory relief. There were some statements about the policy being unconstitutional. But the policy had, by that point, been superseded by a new policy. And I think, in fairness, the district court was addressing arguments about the possibility of a pre-hearing suspension. But there was definitely no dispute about that point. The plaintiff was never subjected to a pre-hearing suspension. That was never even on the table with respect to this particular case. But the university was going to have this investigatory process where he was not going to have what Doe v. Baum says are requirements. In other words, an evidentiary type hearing with cross-examination possible, right? That was what the university was planning on doing until he filed this lawsuit. That's what the university was planning on doing pursuant to its old policy until this court decided Doe v. Baum and it changed its policy. So it wasn't this lawsuit that caused any change in policy, it was Doe versus Baum. But your position is then that he doesn't have standing to complain until there actually is this procedure under the old 2018 policy and he is actually then punished under the old 2018 policy. Is that your position? He can't sue for injunctive relief, sort of building on Judge Mathis's question, he can't sue for injunctive relief until that he actually is bound by their process to be violative of their sexual misconduct rules. I think that's right, Judge Moore, and I think that's just a straightforward application of the ordinary rightness and standing principles. The deprivation has to be imminent or certainly impending and here he could have proceeded. I think the consequences of the contrary rule are pretty staggering. Anytime there's a process that you don't like, you can go to court and challenge that process even if, as a matter of fact, you would have prevailed under it. You would have suffered no cognizable harm. That's exactly the kind of hypothetical dispute that the rightness doctrine is meant to stop courts from adjudicating. And here are the results of the premature adjudication. The process never actually took place. The plaintiff was able to run out the clock that the students were graduating, sort of evaded the process altogether. There was no university was entitled to, in fact obligated under Title IX to investigate these serious allegations. And that never happened because the plaintiff came to court early when there wasn't even any deprivation that was that was eminent. Was there an investigation going on before he filed his? There was, yes. Okay, so he so it wasn't like he was out of the blue bringing this lawsuit. He knew that the university was investigating him. That's right. The investigation had findings proposed. There's sort of an extenuating, extended process, excuse me, and that hadn't even reached the point of preliminary findings. They were interviewing witnesses at the stage where where the plaintiff came to court. The court doesn't have any further questions at the moment. I'll reserve the remainder of my time. Thank you. Good morning. Molly Savage on behalf of the plaintiff of Holly John Doe. I just want to clarify a couple points here. The university's really kind of moving the ball as their briefing goes along as to what stage this investigation was in at the time that plaintiff filed suit. There was nothing left to do in this case but issue a finding. This investigation had been, you know, essentially completed. The process that the university took the position he was entitled to had been completed. And if, I mean, you can look at at some point the university filed a motion asking the district court judge to hurry up because they needed to hold their hearing the last thing that they needed to do before my client graduated. So your opponent's position is that he, John Doe, needed to wait until the investigation actually resulted in an adverse ruling. What's wrong with that position? It's fundamentally incorrect. As to standing and ripeness both, their argument hinges on this idea that there's no cognizable claim here until there's an actual injury in fact or a non-procedural injury or in this case a final decision. This has always been a procedural injury case since day dot. Procedural injuries are the basis for standing all the time. It's not cognizable on its own, however, where if the plaintiff can show that the procedures in question that are being denied here were designed to protect some threatened concrete interest of his, that's the ultimate basis of standing. So the Doe versus Baum case, was it at the same stage that your Doe was? It was more advanced, right? Correct, there had been a finding in that case. So why doesn't that suggest that your argument is relatively weak, that it is premature? We're alleging a procedural injury. There's two different ways that plaintiff can establish standing or an injury in fact if you want to put it under ripeness or understanding. I'll cite the court to a 2020 case, Buchholz, B-U-C-H-H-O-L-Z. This court's really expanding on the idea of what sort of injury is required for a procedural injury and says injury in fact can be proven in two ways. The first is by showing that the defendant violated the statute in a way that caused plaintiff concrete harm or second way by alleging that the procedural violation did not cause tangible harm but created a risk of the harm that the procedure was intended to prevent. That's exactly this case here. The procedure we're talking about is a live hearing with cross-examination. That was unquestionably designed to protect Doe's property interest in his education and we know this from mom, we know this from Cincinnati, this court has you know expanded on the importance of a hearing with cross-examination and what interest it serves. So to say that you know plaintiff has no cognizable claim absent an actual injury, I mean we know that not to be true. Standing can be established via an actual or imminent injury. You know if we're crediting defendants argument here, there's you know no case alleging an imminent injury that's ever going to be right. We know that not to be true. Are there any cases involving challenges to university disciplinary procedures which have allowed a suit at this, shall we say, earlier time? I think the big difference in this case is when we apply the brightness factors, particularly the factor dealing with the development of the factual record. Is there a case that you want to point us to that would support your position? I don't have a university context, no. But I do think that there's a very large difference here as to the factual developments. In all the cases cited by defendants, there's this unknown element as to what process the plaintiff was going to get, eventually got, was entitled to get, whether the procedural injury they're alleging even amounts to a due process deprivation or procedural injury. The plaintiff had an undisputed right to a hearing, a live hearing, with cross-examination. He didn't get one. He was never going to get one. The policy said you don't get one. Defendants said you're not getting one. There's no additional process that he could have been, you know, given by the university that would have changed the fact that he had a procedural injury in this case. Was there any case before Doe v. Bowne that you just... Yes, University of Cincinnati. In fact, in Doe v. Bowne, this court said this has already been established in University of Cincinnati and we are quote reiterating this holding once again. Mind you, University of Cincinnati came down in 2017 and the university made absolutely no effort to amend their policy in any way. They took the position that their single investigator model, which was invalidated in Doe v. Bowne, complied with the University of Cincinnati. Before that... So the University of Michigan was aware of the University of Cincinnati case, which was in the prior year because these events are in... Correct. Spring of 18, is that right? That's correct. And prior to University of Cincinnati, I believe some people would say that Flame v. I believe it's this amount of process was due to accused students where a credibility challenge is being made. That was 2005. If we were to find that it's really only the denial of the transcript and then getting the transcript eight days later and that you would be entitled to partial attorney's fees, how would a court figure that out? What part of your $400,000 attorney's fees would be due to that? Due to just prevailing on the transcript? That's the only thing you're a prevailing party on. I mean, I guess farming out our time entries in this case? So should we remand it to the district court to do that kind of calculation? Probably. Yeah, I don't think we have expertise there. Well, what really is your argument in terms of being a prevailing party? Is it that the policy change was precipitated by your client's lawsuit or by the Baum case coming out? No, Baum is a separate case. There's two different court orders here that we're looking to establish prevailing party. The first being the transcript. The question for the court is not, defendants want to frame it as chronologically what happened first. When did this transcript literally get sent in an email versus when the court entered its order? The relevant question is whether there's sufficient judicial stamp on this. In this case, there absolutely is. An hour before this telephonic status conference, our office had a phone call with defense counsel's office and asked them to release this transcript without a notation. They very much said that they would not do that. Once we got on this conference with Judge Tarnow, he was the influencing force in here. I know we cite to the transcript in our brief where he said, you know what my position is on this issue. Will you recommend to your client that they just give over this transcript? The idea that this was agreed to and a gift to plaintiff is just not, it's belied by the record. The other component that we're looking to is the summary judgment order. Defendants have taken the position that they agreed to provide Doe with a live hearing and cross-examination as of January 2019. What they cite to is irrelevant to that. They cite to an affidavit by counsel from Miller Canfield that says under the new quote, under the new policy, Doe will be provided the opportunity to cross-examine the claimant and all witnesses at a live hearing. Essentially saying we will follow the 2019 policy. That 2019 policy ended up, Judge Tarnow ruled, was unconstitutional. We took the position that it was unconstitutional immediately. That it didn't provide for any of the guarantees that Cincinnati requires. After the interim policy is implemented in early 2019, what's the imminent or actual harm to your clients at that time? It remains the same. The 2019 policy, it was defendant's workaround as a result of bomb. Nowhere in that policy will you find the words cross-examination. All of the availability of a hearing. It does say something in there about the hearing officer can ask questions and the respondent can ask questions to the claimant and that will take place first. It doesn't say the words cross-examination. Certainly, there's a maze that are included in there. There's a sentence about how the hearing officer has complete control and discretion over how the hearing is conducted. Complete discretion over what witnesses are even going to be heard. What sort of questions are going to be asked. That type of a thing. We took the position, it's still, the other statement you're not going to find in there anywhere is where credibility is at stake. Cincinnati, again, was incredibly clear. Where credibility is the deciding factor in these cases, a live hearing with cross-examination needs to occur. That doesn't appear anywhere in the policy. Instead, they use the language, a hearing will occur where warranted and then no further details about who determines when it's warranted, how, etc. There's no question about when it's warranted under Cincinnati. But don't all of these things go to the question of whether it's ripe? I believe it goes to mootness. Which, as far as mootness goes, we offer a couple of different reasons why this case did not become moot with the 2019 policy. As a general, I mean, the district court's analysis as to voluntary cessation and its inability to moot this case, I think, is spot-on. You know, courts look to two factors, whether this is an ad hoc change that occurred or more like legislative process that it was subjected to. The university doesn't dispute that this was more ad hoc than We offer no response to the extensive evidence, as to the other factor, that the university continued to adamantly defend its old policies. We direct the court to University President Schlissel's public statements that came out 20 days after the interim policy was adopted, where he said, quote, I think the Sixth Circuit got it wrong. That's not a stray remark. I'll, you know, point you to our second amended complaint, where there's paragraphs about, where he waxes on about what he thinks the state of the law should be. Quote, even as we comply with the current law, we continue to believe that the single investigator model is the best way. Yes, but he said, even, in your quote, even as we comply. Yeah, and the court's inquiry as to voluntary cessation is whether they continue to defend it. Beyond Schlissel's comments, we also have Rick Fitzgerald, the university spokesperson. This is in July of 2019, so seven months after the policy came out. Quote, the university's right to control its own policies is worth fighting for. We must retain the authority over our policies to do that in the best way we know how, and we are willing to fight in court to maintain that authority. Yeah, it's just incredible. It's, you know, as if they're talking out of both sides of their mouths. But for the court, the district court to credit all of this as in, you know, failing to make absolutely certain that they're not going to return to an unconstitutional policy is without question. Yeah, but the summary judgment, what's that granted as to the 2018 policy? So, the summary judgment came after a remand from this court, in which the the mandate was for the district court to reconsider its preliminary injunction ruling in light of both Baum and the interim policy. So, the court, I think there's a line in the opinion that, you know, he's going to address the 2018 policy, the 2019 policy, as well as the, you know, the idea that this could potentially be moot. So, there is a ruling as to the unconstitutionality of the 2018 policy, as to the 2019 policy, and then there's also an order that the university must provide the due process hearing in this case. If the court doesn't have any other questions, I'll... Thank you. Just three quick points, if I may, Your Honor. The first, there's no case holding that a procedural injury in the vacuum is enough. This court and the Supreme Court have consistently required a concrete harm, like direct you to Rice and to Hornbeak Denton and to Summers v. Earth Island. The Second Circuit and its decision in Coffrin is also pretty illustrative of how that principle applies in the due process context. Second, on voluntary cessation, briefly, the cessation here wasn't voluntary. There was binding precedent in a court order that the university was bound to comply with. There were also stipulations in the record, repeated ones specifically, that this plaintiff would receive the hearing and cross-examination he'd asked for. What about the comments of the university president? I think, as you said yourself, Judge Moore, there was no question that the university, which is a government entity, was going to comply with this court's order. The court, the university expressed the view, but it didn't agree with the Sixth Circuit's decision. I mean, it had taken the opposite position. You say it was I think the university said it was going to defend its policy or had continued to defend its policy, but had amended its policy in January 2019. It didn't appeal that decision and has complied with it ever since. I think there was no voluntary cessation here, again, is the key distinction. There was a court order in cases like Sawyer's, WJW TV, and Davis make clear that binding precedent is enough. And then finally, just as to the transcript, the university released that transcript before the court issued any order. I don't think there's any dispute about that. So the plaintiff had it in hand at the time this court's order, that court's order came down. I don't think they've identified any case where the court order didn't benefit the plaintiff at the time it came down and where the party was nevertheless determined to have prevailed. So I don't think you can find that plaintiff prevailed on that basis. But even if you do, again, I don't think there's any dispute that that dispute became moot within the first couple days of this litigation and a plaintiff would be required to recalculate an appropriate award. The court has no further questions. Thank you very much. Thank you both for your argument. The case will be submitted.